UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BRIARPATCH LIMITED L.P. and
GERARD F. RUBIN,

                    Plaintiffs,                    99 Civ. 9623

     -against-                                     OPINION

GEISLER ROBERDEAU, INC., PHOENIX
PICTURES, INC., MORRIS "MIKE"
MEDAVOY, and TERENCE MALICK,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:


          Attorney for Plaintiffs

          BARRY L. GOLDIN, ESQ.
          3744 Barrington Drive
          Allentown, PA  18104-1759


          Attorneys for Defendants

          GREENBERG TRAURIG, LLP
          200 Park Avenue, 39th Floor
          New York, NY  10166
          By:  Vincent H. Chieffo, Esq.
               Ronald D. Lefton, Esq.

**Sweet, D.J.**

Defendants Phoenix Pictures, Inc. ("Phoenix") and Morris "Mike" Medavoy ("Medavoy") have moved for an order pursuant to Fed. R. Civ. Proc. 54(d) and Section 505 of the Copyright Act, 17 U.S.C. § 505 determining that plaintiffs Briarpatch Limited L.P. (the "Partnership") and Gerard F. Rubin ("Rubin") (collectively "Plaintiffs"), jointly and severally, are liable to Phoenix and Medavoy for their reasonable attorneys' fees and full costs as prevailing parties in this litigation. The motion was heard and marked fully submitted on June 3, 2009.

## Prior Proceedings

The relevant facts and procedural history of this litigation are set forth in numerous decisions of this Court. See e.g., <u>Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.</u>, 2000 WL 235284 (March 1, 2000) (denying motion to remand) (the "2000 Opinion"); 148 F. Supp.2d 321 (June 28, 2001) (denying motion to amend complaint) (the "2001 Opinion"); 2002 WL 31426207 (October 30, 2002) (granting summary judgment to Defendants) (the "2002 Opinion"); 2005 WL 2861604 (November 1, 2005) (granting

1

motion to amend complaint on remand) (the "2005 Opinion");
2007 WL 1040809 (April 4, 2007) (granting, again, summary
judgment to Defendants) (the "2007 Opinion").  The 2000
Opinion and the 2002 Opinion were the subject of Briarpatch
Limited L.P. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d
Cir. 2004) ("Briarpatch 1").  The 2007 Opinion was the
subject of Briarpatch Limited L.P. v. Phoenix Pictures,
Inc., No. 07-CV-5536, 2009 WL 506610 (2d Cir. March 2,
2009)(Summary Order) ("Briarpatch II").

        The Plaintiffs have asserted four claims against
Defendants.  Two claims, originally pleaded by Plaintiffs
as state law claims, asserted claims arising under the
Copyright Act (the "Copyright Claims").  Briarpatch I, 373
F.3d at 306-307; 2002 Opinion at *11-12.  Plaintiffs' two
other claims alleged that Defendants had aided and abetted
breach of fiduciary duties and had conspired to breach
fiduciary duties (the "Fiduciary Duty Claims").  Briarpatch
I, 373 F.3d at 307; 2002 Opinion at *7; 2007 Opinion at
*20.

        All four claims asserted throughout this
litigation against Phoenix and Medavoy related to the
production by Phoenix of the Academy Award nominated

                              2

picture "The Thin Red Line," ("TRL Movie") theatrically
released in the United States in December 1998.  The TRL
Movie was a derivative work based upon the TRL Motion
Picture Rights that Phoenix had acquired by a 1996 written
agreement (the "Phoenix TRL Acquisition Agreement") with
Briarpatch Film Corp. ("Briarpatch Film"), Robert Geisler
("Geisler"), John Roberdeau ("Roberdeau") and Geisler
Roberdeau Inc. ("GRI").  Briarpatch I, 373 F.3d at 306;
2007 Opinion at *5-8.  Plaintiffs have throughout this
litigation claimed that they, rather than Phoenix, own the
TRL Motion Picture Rights, that the production and
exploitation of the TRL Movie infringed the TRL Motion
Picture Rights that Plaintiffs claimed town, and that
Phoenix and Medavoy had conspired with, and aided and
abetted, Geisler's and Roberdeau's breaches of fiduciary
duty arising from their failure to account to Plaintiffs
for the $1,500,000 paid by Phoenix as consideration, inter
alia, for the assignment to Phoenix of the TRL Motion
Picture Rights.  As the Second Circuit noted, both the
Copyright Claims and the Fiduciary Duty Claims
"unquestionably derive from a common nucleus of operative
facts, because they all deal with the purported sale of
'The Thin Red Line' to Phoenix."  Briarpatch I, 373 F.3d at
308.

Prior to filing the instant action, Rubin and the
Partnership had successfully prosecuted an action in New
York State Court against Geisler and Roberdeau (the "1998
New York Action").  In the 1998 New York Action, Plaintiffs
obtained a judgment that inter alia (1) awarded them
$1,500,000 in damages upon the theory that Geisler and
Roberdeau had misappropriated the $1,500,000 paid by
Phoenix in its performance of the Phoenix TRL Acquisition
Agreement and (2) conveyed to Briarpatch all of the
contract rights of Geisler, Roberdeau, GRI and Briarpatch
Film in and to the Phoenix Acquisition Agreement, including
any and all rights thereunder to deferred and contingent
compensation calculated on the commercial success of the
TRL Movie produced by Phoenix.  2007 Opinion at *8-9, 13.

This action was originally filed by Plaintiffs in
August, 1999, in New York State Court against Medavoy,
Phoenix, Terrence Malick, and GRI.  The action was timely
removed by Defendants to this Court on September 10, 1999.
This Court denied Plaintiffs' motion for remand.  2000
Opinion.  For approximately two years, the parties engaged
in discovery and motion practice, including Plaintiffs'
unsuccessful effort to amend their complaint to add a new

4

defendant.  2001 Opinion.  Ultimately, this Court entered
judgment for Medavoy and Phoenix after granting, on the
merits, their summary judgment motions as to the Copyright
Claims and the Fiduciary Duty Claims.  2002 Opinion.

          That judgment, and the 2000 Opinion, was the
subject to an appeal to the Second Circuit.  Briarpatch I.
In Briarpatch I, with respect to Medavoy and Phoenix, the
Court of Appeals (1) affirmed the dismissal of the two
Copyright Claims that were subject to complete preemption
under the Copyright Act, although on grounds different than
those relied upon by this Court, and (2) vacated and
remanded the grant of summary judgment for Defendants on
the two non-preempted Fiduciary Duty Claims (without
reaching the merits).  Briarpatch I, 373 F.3d at 309; 2007
Opinion at *2.  The Second Circuit explained that it
remanded the Fiduciary Duty Claims because its holding that
the claims against GRI were erroneously dismissed left it
"wondering whether plaintiffs would have been able to
gather more evidence to withstand summary judgment had that
corporation been kept in the action as a party.  The
district court is in the best position to answer this
question."  Briarpatch I, 373 F.3d at 309.

Plaintiffs petition for writ of certiorari to the United States Supreme Court was denied.  Briarpatch Limited L.P. v. Phoenix Pictures Inc., 544 U.S. 949, 125 S.Ct. 1704 (2005).

On remand, Plaintiffs sought and were granted the right to file a first amended complaint (the "FAC").  2005 Opinion.  The Plaintiffs FAC asserted no new claims against defendants and in the fifth and sixth causes of action of the FAC, plaintiffs realleged designating those claims as arising under the Copyright Act.  2007 Opinion at *2. Plaintiffs also realleged the identical two Fiduciary Duty Claims that had been alleged in the original 1999 complaint.  Id.

Plaintiffs did add GRI as a defendant to the FAC and purported to serve GRI by serving the New York Secretary of State because GRI, a New York corporation, had been dissolved on September 23, 1998 for failure to pay taxes, a fact of which Plaintiffs have always been fully aware.  2007 Opinion at *2, n.1.  GRI never responded to the FAC and never appeared in this action on remand.  Nor did Plaintiffs ever seek to take any direct discovery from GRI while this action was before this Court on remand.

6

Plaintiffs did depose Geisler, a principal of GRI who was available as a witness before the Briarpatch I appeal, as was, at that time, John Roberdeau.

Plaintiffs have had the opportunity prior to the Briarpatch I appeal to take discovery from GRI and Geisler, not only in this case but in the myriad lawsuits Plaintiffs have been litigating against Geisler, Roberdeau, and GRI for many years. See, e.g., 2001 Opinion, 148 F. Supp.2d at 325, n.3; 2005 Opinion at *1 (listing numerous cases litigated by Plaintiffs, including state cases against GRI); Briarpatch Ltd., L.P. v. Stage Fright LLC, 86 F. Supp. 2d 368 (S.D.N.Y. 2000) (granting Plaintiffs' motion to remand case which named GRI as one of the defendants); Briarpatch Ltd., L.P. v. Pate, 81 F. Supp. 2d 509, 513, 518 (S.D.N.Y. 2000) (granting Plaintiffs' motion to file second amended complaint adding GRI, and others, as defendants and then remanding case to New York state court).

Plaintiffs were allowed to take extended discovery on remand, including depositions of Geisler, Malick (who had been dismissed by Plaintiffs from this action before the Briarpatch I appeal), Malick's business manager (Henry Bamberger), and of Phoenix current and

former employees (all of whom had also been deposed before
the Briarpatch I appeal).  Plaintiffs also propounded
additional written discovery on Defendants, all of which
was responded to.

Pursuant to this Court's order, and after almost
eight months of discovery, on July 31, 2006, defendants
renewed and supplemented their prior motions for summary
judgment on the Copyright Claims and the Fiduciary Duty
Claims.  After remand, Defendants had filed a motion for
summary judgment on the Fiduciary Duty Claims then
remaining in the case, the Court of Appeals having affirmed
in Briarpatch I this Court's prior dismissal of the
Copyright Claims.  In connection with this Court allowing
Plaintiffs to file the amended complaint and take
discovery, this Court ordered that "upon the completion of
discovery, Phoenix and Medavoy are granted leave to renew
their motion for summary judgment on the papers submitted
or any additional materials."  2005 Opinion at *2.

In April, 2007, Defendants' motion for summary
judgment was granted on all claims asserted against them.
The Opinion noted that the Copyright Claims in the FAC were
"based upon the same facts a the two state law claims in

8

the original complaint that this Court, and the Second
Circuit, found subject to complete preemption by the
federal Copyright Act" and that Plaintiffs had admitted
that the copyright claims alleged in the FAC did "'not
raise substantially new theories of recovery' that might
differ from their original complaint" and that Plaintiffs
sought "'similar relief as that previously pleaded.'"  2007
Opinion, at *11.

       The Plaintiffs appealed this Court's grant of
summary judgment to Defendants and the Second Circuit
issued its Summary Order dated March 2, 2009, which
affirmed this Court's grant of summary judgment as to
Medavoy and Phoenix.  <u>Briarpatch II</u>.

       The Court of Appeals ruled that "plaintiffs
declaratory judgment and copyright infringement claims fail
because Briarpatch Film Corp. ("BFC"), not plaintiffs, had
legal title to the copyrights at issue." <u>Briarpatch II</u> at
*1.  The Second Circuit affirmed the 2007 Opinion on the
Copyright Claims stating that Plaintiffs' had produced no
evidence nor presented any legal theory to question
Briarpatch Film's former ownership of the TRL Motion
Picture Rights, and the effective transfer of those rights

to Defendants.  Noting the factual intertwining of
Plaintiffs' Copyright Claims and Fiduciary Duty Claims, the
Second Circuit also affirmed this Court's grant of summary
judgment on the Fiduciary Duty Claims stating that
"plaintiffs' claim that defendants aided and abetted a
breach of fiduciary duty fails for the same reason [as
their Copyright Claims] – they have not adduced evidence
sufficient to allow a trier-of-fact to reasonably infer
that the defendants had 'actual knowledge' of BFC, Geisler,
and Roberdeau's breaches of their fiduciary duties to the
plaintiffs, as required by New York State law."  Id. at *2.
As to Plaintiffs' argument that Defendants had actionable
knowledge about Geisler's and Roberdeau's misdeeds, the
Second Circuit pointedly observed that the "plaintiffs
grossly mischaracterize" Geisler's testimony in their
efforts.  Id. at *1.


**The Defendants Are Prevailing Parties**


        The Copyright Act provides, in relevant part,
that in a copyright action, "the court in its discretion
may allow the recovery of full costs by or against any
party . . . [and] may also award a reasonable attorneys'
fee to the prevailing party as part of the costs."  17

U.S.C. § 505.  The mechanism for recovering such costs and
fees is provided in Fed. R. Civ. P. 54(d)(2).

The Defendants have successfully defended against
all claims actually litigated against them.  As the
prevailing parties, Defendants are entitled to an award of
full costs, and reasonable attorneys' fees, as a matter of
judicial discretion under the copyright statute.  Repp v.
Webber, 892 F. Supp. 552, 560 (S.D.N.Y. 1995); Mathew
Bender & Co., Inc. v. West Pub. Co., 240 F.3d 116, 120 (2d
Cir. 2001).

In Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994),
the Supreme Court held that the standard governing the
award of attorneys' fees under Section 505 of the Copyright
Act should be identical for prevailing plaintiffs and
prevailing defendants.  The Court noted that "[t]here is no
precise rule or formula for making [attorneys' fees]
determinations, but instead equitable discretion should be
exercised," and listed several nonexclusive factors that
courts should consider when exercising such discretion
including "frivolousness, motivation, objective
unreasonableness (both in the factual and in the legal
components of the case) and the need in particular

circumstances to advance considerations of compensation and deterrence." Id. at 534, 534 n.19 (internal quotation marks and citations omitted). The Second Circuit has also stated that a party's unreasonable or bad faith litigation conduct may also serve as a basis for the court's exercise of its discretion to award fees. Mathew Bender & Co., 240 F.3d at 124-25. In all cases, the Supreme Court cautioned, such factors may be used only "so long as [they] are faithful to the purposes of the Copyright Act." Fogerty, 510 U.S. at 534 n.19.

**The Copyright Claims Asserted In
This Action Were Objectively Unreasonable**

In evaluating a motion for attorneys' fees under the Copyright Act, the Second Circuit has stated that "objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted." Mathew Bender & Co., 240 F.3d at 122. "[C]laims that are without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." Penguin Books U.S.A. v. The New Christian Church Of Full Endeavor, Ltd., No. 96-CV-4126, 2004 WL 728878 at *3 (S.D.N.Y. Apr. 6, 2004). It is

not necessary that this Court make a finding of

frivolousness or bad faith in order to award a fee.

Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP, 60 F. Supp.

2d 247, 258-59 (S.D.N.Y. 1999).


            Fees have been awarded based on the prosecution

of claims that have been found "objectively unreasonable"

because they had no sufficient factual basis.  See, e.g.,

Arclightz & Films PVT. Ltd. v. Video Palace, Inc., No. 01-

CV-10135, 2003 WL 22434153 at *5 (S.D.N.Y. Oct. 24, 2003)

(plaintiffs "built their case on little more than

'supposition and innuendo'" and "the consistent lack of

evidentiary support for plaintiff's claims . . . supports a

finding that plaintiff's claims were, in fact, objectively

unreasonable."); Chivalry Film Productions v. NBC

Universal, Inc., No. 05-CV-5627, 2007 WL 4190793, at *3

(S.D.N.Y. Nov. 27, 2007) (finding objectively unreasonable

plaintiff's claims that plaintiff's novel and screenplay

were infringed by two motion pictures after the court

determined on summary judgment that the works were not

substantially similar and that defendants' films were based

upon other independent creations that predated the

plaintiff's copyrighted works); Baker v. Urban Outfitters,

Inc., 431 F. Supp.2d 351, 356, 358-59 (S.D.N.Y. 2006) (In a

13

case where defendant had conceded liability, asserting a
speculative and factually unsupported actual damage claim
for $260,000 for copyright infringement was objectively
unreasonable where court granted partial summary judgment
limiting the amount of actual damages to $3,896.); Mallery
v. NBC Universal, Inc., No. 07-CV-2250, 2008 WL 719218, at
*1 (S.D.N.Y. Mar. 18, 2008) (copyright infringement claim
objectively unreasonable where "nearly every instance of
alleged similarity between [defendant's work] and
plaintiffs' work relates to unprotected ideas rather than
protectable expression."); Rodriguez v. Klum, No. 05-CV-
102318, 2009 WL 73115 at *1-2 (S.D.N.Y. Jan. 8, 2009
(objectively unreasonable to continue litigating
infringement claim after plaintiff received undisputed
evidence that defendants' allegedly infringing television
series was created prior to when plaintiff claimed
defendants had access to plaintiff's allegedly infringed
treatment for a television show); Crown Awards, Inc. v.
Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 296
(S.D.N.Y. 2008) ("Defendant's independent creation defense
proved objectively unreasonable at trial, since it was
predicated on testimony that the court found inherently
incredible."); Vargas v. Transeau, No. 04-CV-9772, 2008 WL
3164586, at *3 (S.D.N.Y. Aug. 6, 2008) (assertion of

14

infringement claim objectively unreasonable where plaintiffs' own expert conceded possibility of independent creation.)

Similarly, fees have been awarded based on the prosecution of claims that have been found "objectively unreasonable" because they had no sufficient legal basis. See, e.g., Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp.2d 663, 667 (S.D.N.Y. 2001) (infringement claim objectively unreasonable because it was based on claim that Earth Flag was sufficiently original to warrant copyright protection when, in fact, it was "nothing more than a public domain photograph" of the earth from space and also because it relied on a theory of copyright expressly rejected by a controlling United States Supreme Court decision); Torah Soft LTD. v. Drosin, No. 00-CV-5650, 2001 WL 1506013 at *4-5 (S.D.N.Y. Nov. 27, 2001) (copyright infringement claim objectively unreasonable because it was based on protection of non-copyrightable portion of plaintiff's work.); Video-Cinema Films, Inc. v. CBS Corp., No. 98-CV-7128, 2003 WL 1701904 at *2-3 (S.D.N.Y. Mar. 31, 2003) (plaintiffs copyright infringement claim based on defendant's use of a short clip from plaintiff's motion picture in television obituaries of actor Robert Mitchum

was objectively unreasonable after court granted summary judgment to defendant on copyright fair use defense because plaintiff's opposition to the motion for summary judgment made unreasonable legal arguments that mischaracterized controlling case law and relied upon inapplicable case law).

Additionally, "obsessive pursuit of [copyright] claims already rejected" is a factor that should be considered in determining objective unreasonableness or the appropriateness of an award of fees in general. Hudson v. Universal Studios Inc., No. 04-CV-6997, 2009 WL 536564, at *3 (S.D.N.Y. Mar. 4, 2009). See also, Bridgeport Music, Inc. v. WB Music Corp., 520 F.3d 588, 593 (6th Cir. 2008) (plaintiffs' "pressing of a futile claim" considered as part of plaintiff's "overly aggressive litigation tactics" in affirming award of attorneys fees under Copyright Act.).

Plaintiffs' copyright claims were premised on the assertion that Phoenix did not acquire the TRL motion picture rights from Briarpatch Film despite having fully performed the Phoenix TRL Acquisition Agreement by July 18, 1997. Plaintiffs have contended:

- That Defendants were bound by the judgment in the 1998 New York Action which Plaintiffs claimed had determined that the Partnership (and not Briarpatch Film) was the legal owner of the TRL Motion Picture Rights as of the Partnership's creation in 1994 and that such finding had been reconfirmed by a 2006 New York court judgment Plaintiffs' counsel had obtained in yet another action to which Defendants were not parties.

- That Briarpatch Film had transferred legal ownership of the TRL Motion Picture Rights to the Partnership upon entering into the Briarpatch Limited Partnership Agreement ("LPA") because prior to that time Briarpatch Film had been administratively dissolved.

- That the Phoenix TRL Acquisition Agreement was only a "quit claim" and therefore did not convey legal ownership of the TRL Motion Picture Rights.

- That Briarpatch Film was never paid at a consideration for any assignment of the TRL Motion Picture Rights to Phoenix.

- That Phoenix was not a bona fide purchaser for value of the TRL Motion Picture Rights because Defendants knew of Plaintiffs' business relationship with

Briarpatch Film, Geisler and Roberdeau, and that
Defendants were aware that that relationship was going
to be breached by Briarpatch Film, Geisler and
Roberdeau.

Plaintiffs' contention that Defendants did not
acquire the TRL Motion Picture Rights by fully performing
the Phoenix TRL Acquisition Agreement, and their factual
and legal arguments to support that contention, had no
legal or factual support.  These claims have been granted
by summary judgment to Defendants and the Second Circuit
has affirmed.

This Court determined that at all times prior to
its transfer of the TRL Motion Picture Rights to Phoenix,
Briarpatch Film had been the legal owner of those rights,
that the Partnership was never the legal owner of those
rights, and that Plaintiffs therefore could not assert any
copyright infringement claim based upon the production of
the TRL Movie by Phoenix.  2007 Opinion at *11-14.

In the second appeal, the Second Circuit affirmed
all of this Court's rejection of Plaintiffs' claims by
Summary Order.  The Second Circuit agreed that Plaintiffs

presented no factual or legal support for their claim that
the Partnership, rather than Briarpatch Film, owned the TRL
Motion Picture Rights and did not convey them to the
Defendants stating that "plaintiffs' contention that
[Briarpatch Film] transferred legal to Briarpatch [LP] is
not supported by any writing in the record, and plaintiffs
have not pointed to any operation of law by which title
would have been transferred." Briarpatch II, at *1.  The
Second Circuit similarly dismissed Plaintiffs' arguments
that Defendants somehow did not acquire good title from
Briarpatch Film because of some alleged knowledge they had
of Rubin's business relationship with Geisler and Roberdeau
and Briarpatch Film.  The Second Circuit concluded that
"Phoenix took title to the copyrights free of [plaintiffs']
purported equitable interest" because "Phoenix purchased
the copyrights for value and plaintiffs have not adduced
sufficient evidence from which a trier-of-fact could
reasonably infer that Phoenix had knowledge of the actions
of BFC, Robert Geisler, or John Roberdeau breached any
duties to Briarpatch [LP] or Rubin." Id.  In reaching this
conclusion, the Court also noted that "plaintiffs grossly
mischaracterize" the Geisler deposition testimony on which
Plaintiffs relied to claim Defendants had such alleged
knowledge. Id.

As this Court has ruled twice, and as the Second Circuit has now confirmed, Plaintiffs for over 8 years of litigation have pursued claims (1) that had no factual or legal basis, (2) that were directly contradicted by the Plaintiffs' own sworn allegations, and the findings and judgment in the 1998 New York Action; (3) that Plaintiffs were judicially estopped from litigating, and (4) that this Court dismissed on the merits in 2002, but which Plaintiffs continued to press despite no new evidence and no change in applicable law.  Plaintiffs' claims were "clearly without merit [and were] patently devoid of legal or factual basis [and they] ought to be deemed objectively unreasonable." Penguin Books U.S.A. v. The New Christian Church Of Full Endeavor, Ltd., supra, 2004 WL 728878 at *3.

In addition, it is appropriate for this Court to consider other equitable factors relevant to this Court's exercise of discretion to award fees and costs.  Indeed, "[i]n an appropriate case, the presence of other factors might justify an award of fees despite a finding that the non-prevailing party's position was objectively reasonable. Matthew Bender, supra, 240 F.3d at 122 (citing Matthews v. Friedman, 157 F.3d 25, 29 (1st Cir. 1998) ("depending on

other circumstances, the district court could conclude that the losing party should pay even if all of the arguments it made were reasonable.")

These other factors, discussed below, include improper motivation of the litigant, unreasonable and bad faith litigation tactics, and the need for compensation and deterrence. See e.g., Baker v. Urban Outfitters, Inc., supra, 431 F. Supp.2d at 357.

## The Motions of the Plaintiffs Were Improper

The prior proceedings establish that this action was brought and litigated for over 8 years because the Plaintiffs concluded that they would never collect any judgment they had obtained, or might obtain, against Geisler and Roberdeau, or any of their affiliates including the judgment entered in the 1998 New York Action. The history of Plaintiffs' litigation marathon demonstrates this. See, e.g., Briarpatch Limited L.P. v. Geisler Roberdeau Inc., 194 F.2d 256, 250-254 (S.D.N.Y. 2002) (Summarizing some of Plaintiffs litigation collection efforts against Geisler and Roberdeau in the New York and

Texas state and federal courts including bankruptcy court
in Texas).

Courts have awarded attorneys fees under the
Copyright Act where other have been so motivated.  See,
e.g., Video-Cinema Films, Inc. v. CBS Corp., supra, 2003 WL
1701904 at *4-5 (Awarding fees where court concluded that
plaintiff's prosecution of copyright infringement claims
based on defendants use of a short clip from a motion
picture in televised obituaries was improperly motivated
because it "was nothing more than an obvious effort to use
the Copyright Act to secure payment from Defendants for
their fair use of the film footage."); Torah Soft Ltd. v.
Drosin, supra, 2001 WL 1506013 at *5 ("{A] party that
knowingly gambles on an unreasonable legal theory in order
to achieve a secondary gain – this case, the leveraging of
a settlement – is indeed improperly motivated."); Baker v.
Urban Outfitters, Inc., supra, 431 F. Supp.2d 351, 356,
358-59 (Court awarded fees and costs in part because it
concluded that plaintiff "(and his counsel" filed and
maintained this suit in an attempt to extract a significant
payment from perceived 'deep pocketed' defendants (and in
an attempt to garner publicity for [plaintiff's] agent and
for his lawyer)."); Mailer v. RKO Teleradio Pictures, Inc.,

332 F.2d 747, 749 (2d Cir. 1964) (Award of attorneys' fees

to defendant affirmed, in part, where Second Circuit found

"the inference inescapable that Mailer" asserted his

copyright claim because he was "disappointed in the failure

of the film [based on the Nakes and the Dead] to return the

expected profits [and he] merely sought to recover those

profits in the form of a judgment or, more likely, a

substantial settlement.").


        The Plaintiffs prosecuted the Copyright Claims

that had already been rejected by this Court in 2002.  As

noted above, "obsessive pursuit of [copyright] claims

already rejected" is a factor that should be considered in

determining objective unreasonableness or the

appropriateness of an award of fees in general.  Hudson v.

Universal Studios Inc., supra, 2009 WL 536564 at *2; see

also, Rodriguez v. Klum, supra, 2009 WL 73115 at *1-2 (Fees

awarded based on plaintiff continuing to litigate

infringement claim after discovering undisputed evidence

that defendants' allegedly infringing television series was

created prior to when plaintiff claimed defendants had

access to plaintiff's allegedly infringed treatment for a

television show.); Bridgeport Music, Inc. v. WB Music

Corp., supra, 510 F.2d at 593 (Plaintiffs' "pressing of a

23

futile claim," even though it was originally objectively
reasonable, considered as part of plaintiff's "overly
aggressive litigation tactics" and a reason for affirming
an award of attorneys fees under Copyright Act.).
Plaintiffs had no new facts to support their Copyright
Claims (or their Fiduciary Duty Claims) after this Court
first granted summary Judgment (2002 Opinion) and after
dismissal of those claims was affirmed in Briarpatch I,
albeit on different grounds.  Indeed, Plaintiffs never
produced any new relevant facts in opposition to Defendants
renewed motion for summary judgment.  2007 Opinion at *3.

Plaintiffs on numerous occasions actively
mischaracterized testimony.  See, e.g., Briarpatch II at *1
(stating that Plaintiffs "grossly mischaracterize"
Geisler's testimony), 2007 Opinion at *23 n.10 and *19
(rejecting Plaintiffs' characterization of Medavoy's
testimony about his views of Geisler and Roberdeau and
Plaintiffs' false claim that Briarpatch Film did not
receive any of the consideration paid by Phoenix).

While this case was originally before this Court,
and after this Court denied Plaintiffs' remand motion,
Plaintiffs moved to file an amended complaint to add as a

new defendant the former New York law firm that represented Geisler and Roberdeau. In part that motion was denied because Plaintiffs brought it for the improper purpose of trying to divest this Court of subject matter jurisdiction. 2002 Opinion, 148 F. Supp. 2d at 330-33. On more than one occasion, Plaintiffs have filed motions without the required memorandum of law. Id., 148 F. Supp. 2d at 329.

In light of the foregoing, this is a case where an award of fees is important for deterrence and to compensate Defendants for expense of this suit which should never have been brought, and even if brought, should never been litigated as Plaintiffs litigated it. "[T]he denial of fees and cost to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort an award of fees and costs is designed to 'chill.'" Chivalry Film Productions, 2007 WL 4190793, at *3 (citation omitted); Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d at 359; Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp. 2d at 668; Arclightz & Films PVT. Ltd. v. Video Palace, Inc., 2003 WL 22434153 at *5.

Plaintiffs have contended that the instant motion of the Defendants is premature and is just an effort to delay final resolution of this almost 10-year old lawsuit. However, Judgment of May 1, 2007, specifically retained jurisdiction "for the purpose of hearing a motion, as allowed by Fed. R. Civ. P. 54(d)(2), by Defendants for recovery of full costs and attorneys' fees pursuant to 17 U.S.C. § 505." By letter endorsed by this Court dated May 2, 2007, this Court ordered that Defendants' motion for attorneys' fees and costs under the Copyright Act be filed by Defendants no later than 30 days of the Plaintiffs' appeal becoming final.

This Court's jurisdiction to decide the pending motion is not affected by the pendency of Plaintiffs' appeal with respect to the issue of Plaintiffs' claim for an award of costs against the moribund GRI. This Court retains jurisdiction to make an award of attorneys' fees under the Copyright Act (or any other fee shifting statute), matters collateral to the final judgment, even after the filing of a notice of appeal with respect to final judgment on the merits of the underlying dispute. White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 452 (1982); Yurman Designs Inc. v. PAJ, Inc. No.

98-CV-8697, 2001 WL 797474, *2 (S.D.N.Y. 2001).  Moreover,
the Second Circuit has affirmed this Court's grant of
summary judgment in Defendants' favor on all claims.
<u>Briarpatch Ltd. LP v. Phoenix Pictures, Inc.</u>, 312 Fed.
Appx. 443 (2d Cir. 2009).

### Rubin Is Liable Only As A Winding Up Partner

The FAC alleged that all named general partners
of GRI were dissolved prior to 1998 and the Partnership was
dissolved.

Where, as here, all general partners have been
dissolved and so disqualified from serving as general
partner, it becomes necessary for someone else to prosecute
Partnership claims and wind up the Partnership.  To
encourage limited partners to do so, New York Partnership
Law exculpates from liability a limited partner serving as
winding up partner:

> Upon dissolution of a limited partnership, the
> persons winding up the limited partnership's
> affairs may, in the name of, and for and on
> behalf of, the limited partnership prosecute and
> defend suits, whether civil, criminal or
> administrative . . . all without affecting the
> liability of limited partners including limited

27

partners participating in the winding up of the
limited partnership's affairs.

N.Y. P'Ship Law § 121-803(b).


Upon dissolution of the Partnership, sole limited
partner Rubin was so designated, and then found in the
state court's July 1999 decision to be properly serving as,
sole winding up partner of the Partnership.


The First Amended Complaint alleged that Rubin
filed the action as "sole limited and designated winding up
partner of the Partnership".  Accordingly, Rubin is
explicitly exculpated from any liability beyond that of a
winding up partner.


In light of the foregoing conclusions and
authorities, the Defendants' motion is granted.  The
parties will meet and confer to schedule any further
proceedings with respect to fees and costs.


It is so ordered.


November   25 , 2009

Robert W. Sweet
U.S.D.J.